IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JUNIOR HENRY BARNES,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀CASE NO. CV410-178
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
3/12 TRANSPORTATION, INC.,⠀)
and CASTLEPOINT FLORIDA⠀⠀)
INSURANCE COMPANY,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants.⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

## O R D E R

Before the Court are Defendants 3/12 Transportation, Inc. and Castlepoint Florida Insurance Company's ("Defendants") Motion for Summary Judgment (Doc. 26), Amended Motion for Summary Judgment (Doc. 31), and accompanying Daubert Motion to Exclude the Expert Testimony of Plaintiff's Expert Witness John D. Bethea (Doc. 27).[1]  For the reasons outlined below, Defendant's Daubert motion is **GRANTED IN PART** and **DENIED IN PART**.  Mr. Bethea may not offer testimony to speed of Plaintiff's truck or the rear taillights on Plaintiff's trailer; however, Mr. Bethea may

---

[1] Defendants original summary judgment motion omitted pages 7-9 and 12.  The amended motion corrected the error. References to the motion for summary judgment will be to the amended motion (Doc. 31) except where there are citations to exhibits provided with the original motion for summary judgment (Doc. 26).

offer testimony concerning the contours of southbound Interstate 95 at the approximate location of the accident and concerning Brown's response time. Additionally, Defendants' original and amended motions for Summary Judgment are **DENIED**.

## BACKGROUND

At some time around midnight on March 10 or early morning of March 11, 2010, Plaintiff Junior Henry Barnes was traveling south in his vehicle-hauler tractor trailer on Interstate 95 near Pooler, Georgia.[2] (Doc. 31 at 1.) 3/12 Transportation employee Norshan Brown ("Brown") was also traveling south on Interstate 95 in his tractor trailer at the same time and place. (Doc. 33 at 1.) After Plaintiff slept for eight hours at the truck stop, he conducted an inspection and began driving south on Interstate 95. (Doc. 26, Ex. 3 at 28.) Soon after Plaintiff started to drive, he noticed transmission problems. (Doc. 33 at 1; Doc. 26, Ex. 3 at 29-30.) Plaintiff contends that he had just passed the inspection station and decided to continue to the nearest truck stop. (Doc. 33 at 31.) According to Plaintiff, he "activated his four-way emergency flashers and proceeded to

---

[2] Taken in the light most favorable to the nonmoving Plaintiff, the Court construes the facts as follows. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

Exit 90 in the outermost lane of travel at a speed of approximately 40-45 miles per hour." (Doc. 33 at 2.)

At some point soon thereafter, Brown's truck struck the rear of Plaintiff's trailer. (Doc 33 at 2; Doc. 31 at 2-3.) Both Plaintiff and Brown testified that Plaintiff continued to drive after Brown's truck collided with Plaintiff's trailer. (Doc. 26, Ex. 3 at 33, 35; Id., Ex. 1 at 23, 55-56.) Initially, Brown stated that Plaintiff's trailer lights were not working at the time of the incident. (Doc. 26, Ex. 1 at 45.) Later, Brown remarked that he was not sure whether Plaintiff's trailer lights were working or not. (Id. at 49-50.) Still later, Brown remarked that Plaintiff's trailer had "two teeny lights on the back," but that he could not see them. (Id. at 50-51.) Brown also told police officers immediately following the incident that Plaintiff applied his brakes right before collision. (Doc. 26, Ex. 2.) However, during his deposition, Brown testified that Plaintiff had not applied his brakes, but later corrected his statement to say that Plaintiff, indeed, did slam on his brakes. (Doc. 26, Ex. 1 at 55-56.) Brown stated that he could not see Plaintiff's truck until just prior to impact and that he could not avoid the collision because there were nearby and adjacent vehicles. (Id. at 45.) Plaintiff disputes this, however, claiming there were

3

no nearby vehicles impeding Brown from changing lanes.[3] (Doc. 26, Ex. 3 at 32.)

Four days later, Plaintiff first sought medical attention from his primary care physician, Dr. Chitra Rajpal, at Clinch Medical Practice in Homerville, Georgia. (Doc. 26, Ex. 5)   According to Plaintiff, he suffered "severe neck pain following the wreck and underwent surgery to repair the damage caused by the wreck."   (Doc. 33 at 2; Doc. 26, Ex. 3 at 44-46.)   Plaintiff was referred by Dr. Rajpal to Dr. Hitham Khalil, a neurosurgeon in Valdosta, who performed surgery on Plaintiff's neck in August 2010.   (Doc. 26, Ex. 3 at 46.)   Plaintiff plans to have Dr. Khalil testify that "within a reasonable degree of medical certainty, [the] March 2010 collision exacerbated [Plaintiff's] pain symptoms and precipitated the need for [Plaintiff] to undergo surgery."   (Doc. 33 at 3.)

As a result of the collision, Plaintiff filed this action, asserting negligence and negligence per se claims based on Brown's failure to exercise ordinary care in colliding with Plaintiff.   (Doc. 1 ¶ 14.)   Plaintiff alleges that Defendants, through Brown, violated the duties owed to Plaintiff by failing to exercise due care, following too

---

[3] Brown testified that there were no vehicles traveling between him and Plaintiff's truck.   (Doc. 26, Ex. 1 at 45.)

4

closely, failing to keep a vigilant lookout ahead, failing to avoid collision with Plaintiff's trailer, traveling too fast for conditions and being otherwise negligent and careless. (Id. ¶ 15.) Due to Brown's negligence, Plaintiff alleges he suffered injury and damages. (Id. ¶ 16.)

Plaintiff has engaged John Bethea as an expert witness to testify that Plaintiff's vehicle hauler was traveling at a speed of 40-45 miles per hour, the rear taillights on Plaintiff's trailer were operational, and Brown had a clear view of the rear of Plaintiff's trailer. (Doc. 25 at 4.) Defendants have filed a motion to exclude the testimony of Mr. Bethea. (Doc. 27.) Defendants argue his testimony should be excluded because it is unreliable and not based upon sufficient facts or data.[4] (Doc. 27 at 2-3.) Plaintiff objects to the exclusion of Mr. Bethea's testimony and avers that Mr. Bethea's methodology and analysis meet Daubert standards and is reliable. (Doc. 29 at 5-6.) Defendants did not depose Mr. Bethea.

In conjunction with the motion to exclude, Defendants filed a motion for summary judgment (Doc. 26) and a corrected, amended motion for summary judgment (Doc. 31).

---

[4] Defendants objected to the entire testimony of Mr. Bethea, but later in the motion only listed three of his four opinions. Out of an abundance of caution, the Court will construe Defendants' motion to exclude all four opinions of Mr. Bethea.

5

In their motion, Defendants argue that Plaintiff has failed to provide evidence concerning whether Brown violated any duty or standard of care owed to Plaintiff. (Id. at 7.) In the alternative, Defendants allege that Plaintiff's contributory negligence warrants summary judgment in favor of Defendants. (Doc. 31 at 12-14.) Plaintiff contends that issues of material fact and jury questions exist, thereby precluding summary judgment. (Doc. 33 at 1, 7.)

**ANALYSIS**

I.   MOTION TO EXCLUDE

The admission of expert testimony is controlled by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"As the Supreme Court made abundantly clear in Daubert, Rule 702 compels district courts to perform the critical gatekeeping function concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation omitted).

The Eleventh Circuit Court of Appeals has explained that district courts fulfill that function by engaging in a three part inquiry, considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific . . . expertise, to understand the evidence or to determine a fact in issue.

Id.  While there will often be some overlap between these concepts of qualification, reliability, and helpfulness, they are distinct concepts that courts should be careful not to conflate.  Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  The burden of establishing that these requirements are met rests with the proponent of the expert testimony, and not the Daubert challenger.  McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).

When a court considers the reliability of a particular expert's opinion, it considers, to the extent possible, (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

Quiet Tech., 326 F.3d at 1341 (citing McCorvey, 298 F.3d at 1256).    These factors "do not constitute a 'definitive checklist or test.' "  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 (1993)).  Rather, the applicability of these factors "depends upon the particular circumstances of the particular case at issue."  Id.

Defendants argue that Mr. Bethea's testimony should be excluded because his opinions concerning the speed of Plaintiff's truck, the rear taillights on Plaintiff's trailer, and Brown's view of the rear of Plaintiff's trailer are unreliable and based on insufficient facts.[5]  (Doc. 25 at 4.)    Specifically, Defendants contend that Mr. Bethea "relied solely upon documentary evidence such as photographs and the accident report, and the deposition testimony of the drivers involved in the collision."   (Doc. 27 at 2.) Defendants also seek exclusion because Mr. Bethea did not "examine either one of the vehicles in the accident, or the scene of the collision" and did not interview any witnesses. (Id. at 2-3.)

After review of Mr. Bethea's report (Doc. 25), the Court concludes that Mr. Bethea's opinions as to the speed

---

[5] Defendants did not challenge Mr. Bethea's qualifications as an expert witness.  (Doc. 25 at 5 n.5.)   This Court finds Mr. Bethea qualified to render an expert opinion.

8

of Plaintiff's vehicle and the functioning of Plaintiff's trailer lights will not assist the trier of fact to further understand the evidence or to determine a fact in issue. Both of these opinions merely parrot relevant, admissible evidence that does not require any technical or specialized analysis or expertise.   Indeed, Mr. Bethea's first opinion restates undisputed testimony of both Plaintiff and Brown that the speed of Plaintiff's vehicle was 40-45 miles per hour.    (Doc.  29-1  at  32:2-5;  Doc.  29-2  at  47:21-22.) Further, Mr. Bethea's first opinion relies upon the accident report to determine the location of the accident, another undisputed fact among the parties.    (Doc. 25 at 3.)    Mr. Bethea did not apply or conduct any technical or scientific analyses to form this opinion.

Curiously, as to his second opinion, Mr. Bethea, an expert in accident reconstruction, conducted no visual inspection of the taillight lamps of Plaintiff's trailer to determine their operational status, even though the factual allegations regarding the trailer lights are in dispute. (Id.)    Instead, Mr. Bethea again relies only upon the deposition testimony provided by Plaintiff and Brown to form his opinion.   (Id.)   No technical or scientific analysis was performed and the opinion simply restates admissible documentary evidence.    The trier of fact does not need

additional, cumulative, and duplicative opinions as to evidence that is readily discernible without the aid of an expert. Additionally, Plaintiff, as the proponent of Mr. Bethea's testimony, has not established that the methodology used to restate favorable testimony from a deposition to form his conclusion is sufficiently reliable or would assist the trier of fact. See Frazier, 387 F.3d at 1260. Again, Mr. Bethea simply restates Plaintiff's position that the trailer tail emergency lights were activated at the time of collision and highlights Brown's conflicting testimony that he saw lights on the trailer. (Doc. 25 at 4.)

However, Mr. Bethea may offer testimony concerning limited portions of his third and fourth opinions—namely, the fact that the section of southbound Interstate 95 at the approximate location of the collision is straight for at least 1/2 mile north of the accident location, and that Brown responded slower than 85 percent of the population to the presence and reduced speed of Plaintiff. These opinions rely on Mr. Bethea's expertise in accident reconstruction as to roadway configuration and response times. While Defendants object to this testimony on the grounds that it is based on insufficient facts and data, the Court finds the principles and methodologies upon which Mr. Bethea relied to be proper. See Daubert, 509 U.S. at 595. It is the

methodology and not the conclusions that are determinative when the Court performs its gate-keeping function. Id.

Defendants are free to conduct "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" to attack admissible evidence.[6] Id. Mr. Bethea must limit his testimony to only this; he may not testify about the speed of Plaintiff's vehicle or the functioning of Plaintiff's trailer lights. Accordingly, Defendants' motion to exclude Mr. Bethea's testimony is **GRANTED IN PART** and **DENIED IN PART**.

II. MOTION FOR SUMMARY JUDGMENT

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56 advisory committee notes).

---

[6] The Court makes no opinion as to the weight or value of this evidence, but merely informs the parties as to the opportunities afforded Defendants pursuant to Daubert.

11

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The substantive law governing the action determines whether an element is essential.   DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323.   The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case.   Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant.   Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

"In a diversity jurisdiction case, the court applies the substantive law of the state in which the case arose." Azar v. Nat'l City Bank, 382 F. App'x 880, 884 (11th Cir. 2010). Because this case is based on diversity jurisdiction, the Court will look to the laws of Georgia for guidance. To state a cause of action for negligence in Georgia, a plaintiff must show:

> (1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to plaintiffs' legally protected interest resulting from the breach.

Shortnacy v. N. Atlanta Internal Medicine, P.C., 252 Ga. App. 321, 325, 556 S.E.2d 209, 213 (2001).

In Georgia, "[e]ven in rear-end collisions, negligence is not to be presumed, but is a matter for affirmative

13

proof." Davis v. Sykes, 265 Ga. App. 375, 375, 593 S.E.2d 859, 861 (2004). Under Georgia law, the issue of negligence in automobile accident cases is ordinarily for the jury. See Herringdine v. Barger, 405 F.2d 183 (5th Cir. 1968); Gee v. Owens, 384 F.2d 704 (5th Cir. 1967) (finding that the question of negligence in connection with conduct of automobile drivers rarely can be decided as matter of law).[7] Further, negligence is a question of fact where there is a conflict in the evidence. Davis v. Atlanta Coca Cola Bottling Co., 119 Ga. App. 422, 167 S.E.2d 231 (1969). Because "[r]ear-end collision cases are particularly well suited for jury determination," liability should be determined by a jury "except in those rare circumstances when a party admits liability or the facts are undisputed." Beckett v. Monroe, 249 Ga. App. 615, 616, 548 S.E.2d 131, 134 (2001).

Georgia law requires the exercise of ordinary care. Shortnacy, 252 Ga. App. at 213. Relating to automobiles,

> [j]ust how close to a vehicle in the lead a following vehicle ought, in the exercise of ordinary care, be driven, just what precautions a driver of such a vehicle in the exercise of ordinary care take to avoid colliding with a leading vehicle which slows, stops, or swerves in

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 109 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

> front of him, just what signals or warnings the
> driver of a leading vehicle must, in the exercise
> of due care, give before stopping or slowing up or
> his intention to do so, may not be laid down in
> any hard and fast or general rule.

Atlanta Coca-Cola Bottling Co. v. Jones, 236 Ga. 448, 450-51, 224 S.E.2d 25, 25 (1976).   In each case, except when reasonable minds may not differ, what due care required and whether it was exercised is for the jury. Cardell v. Tenn. Electric Power Co., 79 F.2d 934, 937 (5th Cir. 1935).[8]   And because there are no hard and fast rules to determine ordinary care, "[o]ne of the best known rules in automobile tort law is that negligence, the solution of what negligence, whose negligence, etc., has caused a collision is left solely to the jury, except in plain and palpable cases." Alexander v. Kendrick, 134 Ga. App. 249, 251, 213 S.E.2d 911, 913   (1975) (citing Hanchey v. Hart, 120 Ga. App. 677, 680, 171 S.E.2d 918 (1969); Wakefield v. A. R. Winter Co., 121 Ga. App. 259, 174 S.E.2d 178 (1970)).

Construing the facts in the light most favorable to Plaintiff, the Court finds that the case at hand is neither one where reasonable minds would not differ nor or one that is plain or palpable.   See Kendrick, 134 Ga. App. at 249,

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

213 S.E.2d at 913.   There is disputed testimony concerning whether Plaintiff's trailer had operating emergency lights. It is also not readily apparent the extent to which Brown's failure to see Plaintiff's truck was a breach of his standard of care.   As Georgia case law has held, where minds can differ, it is the jury, not the court, that is most appropriate to determine these issues.   See also Daves v. Davidson, 228 Ga. App. 542, 542, 492 S.E.2d 304, 305-06 (1997) (citations omitted) (holding that "whether or not the following or approaching from the rear vehicle in a rear-end collision case has exercised ordinary care to avoid the collision is usually a jury question").   The facts are also unclear as to whether Brown exercised the appropriate standard of care when he failed to avoid the collision—in terms of when Brown saw Plaintiff's truck, whether there were other vehicles that impeded his ability to switch lanes, and whether Plaintiff's trailer lights were activated at the time of the collision.   All of these facts are appropriate for a jury to weigh and decide upon.

Furthermore, it is the jury who must "consider whether defendant failed to exercise ordinary care in driving his automobile in the manner of an ordinarily prudent person at the time of the collision."   Glaze v. Bailey, 130 Ga. App. 189, 189, 202 S.E.2d 708, 709 (1973).   Generally, it is a

16

jury question to determine any breach of an applicable duty for a negligence cause of action where a plaintiff is rear-ended by a defendant.   Id.   One of the critical issues to resolve is whether Plaintiff's emergency flashers and lights were operational, and if so, whether it reasonable that Brown should have seen them.   Because there is a conflict in the evidence as to the parties' exercise of ordinary reasonable care, a jury, not the Court, is in the best position to weigh the evidence and decide this factual dispute.   See Luke v. Spicer, 194 Ga. App. 183, 183, 390 S.E.2d 267, 267 (1990).

Defendants rely on Hendrix v. Sexton, which affirmed that, although issues of negligence are generally left to the jury, in cases where the alleged negligent conduct is susceptible to only one inference, the question becomes a matter of law for the court to determine.   223 Ga. App. 466, 466, 477 S.E.2d 881, 882 (1996).   In Hendrix, there was undisputed evidence indicating that defendant had the right of way and plaintiff drove into the path of defendant. Here, however, unlike in Hendrix, there exist disputed facts that are material and susceptible to multiple inferences.[9]

---

[9] It is not the role of the Court to weigh the evidence or decide the issues of fact on a motion for summary judgment. In fact, although a jury might ultimately find for Defendant despite all the evidence being construed by the Court more

Defendants also cite additional decisions that affirmed as a matter of law judgments in favor of a colliding driver where the record contained undisputed material facts.   Hunsucker v. Belford, 304 Ga. App. 200, 695 S.E.2d 405 (2010); Lauffer v. Brooks, 220 Ga. App. 51, 467 S.E.2d 345 (1996).   Such is not the case here.

The present case is also distinguishable from Davis v. Sykes, 265 Ga. App. 375, 593 S.E.2d 859 (2004), where the Georgia Court of Appeals held that judgment for a rear-ending defendant as a matter of law was appropriate because the rear-ended plaintiff failed to sustain the burden of proving defendant's negligence.   Id. at 860, 593 S.E.2d at 860.   In Davis, the only testimony presented at trial was from plaintiff and plaintiff's treating physician.   Id. at 861, 593 S.E.2d at 860.   Unlike the case before this Court, Davis did not have any disputed facts as to Defendant's purported negligence and involved limited evidence only proffered by the plaintiff.   Even so, Davis survived summary

---

favorably toward Plaintiff in this summary judgment motion, the evidence does not require the Court to rule for Defendant.   See Hillary v. Burrell, 237 Ga. App. 792, 793, 516 S.E.2d 836, 837 (1999); see also Barber v. Atlas Concrete Pools, 155 Ga. App. 118, 119, 270 S.E.2d 471, 473 (1980) (trial court is not authorized to weigh the evidence or to decide issues of fact when they exist).

judgment and went to trial before the directed verdict was authorized and later affirmed.  Id., 593 S.E.2d at 860.

Defendants also claim that Plaintiff has failed to show that Brown's acts or omissions were the proximate cause of Plaintiff's injuries.  (Doc. 31 at 10.)  Defendants cite several cases alleging that, at present, there is no causal link between Brown's alleged negligence and Plaintiff's injuries.  (Doc. 31 at 11.)  However, again, all of the cases cited by Defendants involve instances that survived summary judgment and reached the jury.  Dailey v. Echols, 265 Ga. App. 459, 461, 594 S.E.2d 658 (2004); Butts v. Williams, 247 Ga. App. 253, 256, 543 S.E.2d 779 (2000); Collins v. McGlamory, 152 Ga. App. 114, 262 S.E.2d 262 (1979).  Yet again, "[w]hether plaintiff has in fact suffered injury, as well as whether the defendant may be liable therefore, are peculiarly questions for jury."  Miller v. Dean, 113 Ga. App. 869, 870, 140 S.E.2d 191, 192 (1966).  In this case, jury questions remain as to proximate cause.  (Doc. 31 at 10-12.)  One is whether Brown exacerbated Plaintiff's pre-existing conditions by colliding with Plaintiff.  (Doc. 33 at 8.)  Another jury question is whether Brown's acts or omissions were enough to precipitate Plaintiff to undergo additional spinal surgeries.  (Id. at 9).  The jury can weigh any inconsistency between

19

Plaintiff's and Brown's testimony regarding the collision, Plaintiff's preexisting diseases, and relevant conduct following the incident.  See Miller, 113 Ga. App. at 870, 140 S.E.2d at 192.   As such, summary judgment is not appropriate.

Finally, Defendants allege that summary judgment is warranted because Plaintiff's own negligence was comparatively greater than that of Brown.   (Doc. 31 at 12.) Defendants again rely on Georgia case law and attempt to suggest that it supports their motion for summary judgment. See Johnson v. Loggins, 211 Ga. App. 265, 266, 438 S.E.2d 711 (1993); Nelson v. Miller, 169 Ga. App. 403, 404-05, 312 S.E.2d 867 (1984); Blalock v. Staver, 132 Ga. App. 628, 629-30, 208 S.E.2d 634 (1974); Boatright v. Sosebee, 108 Ga. App. 19, 21, 132 S.E.2d 155 (1963).   However, all these cases once more involve comparative negligence issues that survived summary judgment and where the case was able to at least reach the jury.   In the present action for injuries sustained during an automobile collision, the issue of negligence of both parties is a jury decision. See Jarrett v. Parker, 217 S.E.2d 337, 135 Ga. App. 195 (1975); see also Piland v. Meli, 240 S.E.2d 193, 194, 143 Ga. App. 783, 784 (1977) (finding that jury questions existed as to whether plaintiff was to some degree negligent and to what degree).

## CONCLUSION

For the foregoing reasons, Defendants' _Daubert_ motion is **GRANTED IN PART** and **DENIED IN PART**. Mr. Bethea may not offer testimony to speed of Plaintiff's truck or the rear taillights on Plaintiff's trailer; however, Mr. Bethea may offer testimony concerning the contours of southbound Interstate 95 at the approximate location of the accident and concerning Brown's response time. Defendants' motion and amended motion for summary judgment are **DENIED**.

SO ORDERED this _23_ᴿᴰ day of March 2012.

_[signature]_

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA